lml

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **AMBER CLOPTON,** | ) | |
| **on Behalf of Herself and All Others** | ) | |
| **Similarly Situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 10-1229-JAR-JPO** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TSS, INC. and** | ) | |
| **WILLIAM GRAY, IV,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

Plaintiff, a former employee of defendant TSS, Inc. ("TSS"), brings this collective action on behalf of herself and others similarly situated against defendants for failing to pay overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* Plaintiff also asserts a claim in the alternative under the Kansas Minimum Wage and Maximum Hour Law, K.S.A. § 44-1201 *et seq.*, as well as a state common law claim of retaliatory discharge. This matter is before the Court on defendants' Motion to Dismiss First Amended Complaint with regard to plaintiff's FLSA claim (Doc. 18).[1] The motion is fully briefed and the Court is prepared to rule. For the reasons explained in detail below, the Court denies defendants' motion to dismiss and grants plaintiff leave to amend her Complaint.

---

[1]On November 4, 2010, Magistrate Judge O'Hara granted defendants' motion to stay discovery and a ruling on plaintiff's pending motion for conditional class-certification pending resolution of the instant motion to dismiss (Doc. 27).

## I.    Rule 12(b)(6) Standard

To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[2]  Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[3]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[4] but requires more than "a sheer possibility."[5]

The plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*[6] seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[7]  *Twombly* does not change other principles, such as that a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[8]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but]

---

[2]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[3]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[4]*Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949 (2009).

[5]*Id.*

[6]550 U.S. 544 (2007).

[7]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[8]*Id.* (citing *Twombly*, 550 U.S. at 556).

we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[9]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[10]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[11]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]

Along with their motion, defendants have submitted evidence outside the pleadings to which they refer to buttress their arguments.  Defendants attach an affidavit from Gray, a TSS Service Agreement, and a sample billing statement.  Generally, "when matters outside the pleadings are presented to and not excluded by the court [in deciding a motion under Rule 12(b)(6)], the motion must be treated as one for summary judgment under Rule 56."[13]  The court has discretion to accept or reject documents attached to a motion to dismiss pursuant to Rule 12(b)(6).[14]  The court, however, must give the parties notice and an opportunity to present relevant evidence before converting a motion to dismiss into a motion for summary judgment.[15]

Plaintiff objects to consideration of these materials in the context of a Rule 12(b)(6)

---

[9]*Iqbal*, – U.S. –, 129 S. Ct. at 1949–50.

[10]*Id.* at 1950.

[11]*Id.*

[12]*Id.* at 1949.

[13]Fed. R. Civ. P. 12(d).

[14]*Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1341 (10th Cir. 2000).

[15]*David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).

motion and requests that, should the Court consider these materials, it convert defendants'

motion to one for summary judgment under Rule 56 and either deny or defer ruling on the

motion under Rule 56(f).  Plaintiff notes that no discovery has been conducted, and has filed the

corresponding affidavit of counsel Sean McGivern in support of her request along with her own

affidavit detailing the duties she performed as a Residential Companion.  Although not

controlling, the Court notes that defendants do not request that the Court convert the motion to

summary judgment, do not provide a concise statement of material facts as required by D. Kan.

Rule 56.1, and object to the affidavits submitted by plaintiff.[16]

Because the parties have not conducted any discovery, which has been stayed at

defendant's request pending a ruling on the instant motion, and the Court can consider

defendants' motion to dismiss without going beyond the four corners of the Complaint, the Court

declines to convert the motion to one for summary judgment and will not consider evidence

outside the Complaint.

## II.      First Amended Complaint

The following facts are alleged in plaintiff's First Amended Complaint ("the Complaint")

and construed in the light most favorable to plaintiff.  TSS is a licensed community service

provider for people with developmental disabilities.  It offers the following services: day

services, residential services, targeted case management, and supportive home care.  TSS offers

residential services through its group homes in which clients can live and get the care they need.

At any given time, TSS operates approximately three to four group homes.

---

[16]*See Grogan v. O'Neil*, 292 F. Supp. 2d 1282, 1292 (D. Kan. 2003) (declining to exercise discretion to
treat motion to dismiss as one for summary judgment for several reasons, including that the motion did not contain
the required statement of material facts and the parties did not request the court to convert the motion to summary
judgment).

TSS employees perform activities in connection with the activities of a public agency, including Sedgwick County Developmental Disability Organization. TSS is also involved with IIINK, LLC ("IIINK"), an ink cartridge recycling company that operates on TSS premises. IIINK was created for the express purpose of growing TSS's Day Services program. IIINK handles and sells goods that have been moved in or produced for commerce by any person.

Plaintiff was employed by TSS as a Residential Companion from September through November 2008, and from May through October 31, 2009. As a Residential Companion, plaintiff worked at the "Girls' House," also referred to as "Mockingbird," one of TSS's group homes that houses individuals with disabilities. Plaintiff's job duties included, among other things: cleaning; washing dishes; dispensing medications; transporting TSS clients for various reasons, including shopping trips; shopping; and bathing the residents. Plaintiff spent more than twenty percent of her total weekly hours performing general household work, such as meal preparation, bed making, washing clothes and other similar services.

Plaintiff's regular rate of pay was $8.00 per hour. Plaintiff routinely worked more than forty hours per week, and defendants failed to pay her any overtime premium for overtime hours. Plaintiff asserts that, as a Residential Companion, she was not exempt from the overtime provisions of the FLSA.

William Gray, IV ("Gray") was an owner, employee and officer of TSS, and acted directly or indirectly in the interests of TSS in relation to Clopton. As an officer of TSS, Gray was responsible for and intimately involved in employment practices at TSS, including hiring, firing, scheduling, and the decision not to pay plaintiff and other Residential Companions overtime pay. According to TSS's website, Gray is "actively involved in the day-to-day

operations of [TSS], and as a result, [TSS] clients get their problems attended to immediately without having to wait on the approval of a board."

Gray owns Mockingbird and leases it to TSS. Monthly rent for Mockingbird is paid to Gray by TSS. Defendants' clients are required to cover the expenses incurred by TSS for its rent paid to the owners of the group homes. TSS pays the utilities at the group homes and then prorates the total amount among the residents at each group home. Defendants handle the payment of their clients' monthly bills, including rent, utilities, phone, cable, and other miscellaneous costs, for which TSS charges each client an Administrative Fee.

Defendants' clients would not be allowed to live in the group homes if they were not contracting with defendants for TSS's services. Defendants use a part of the group homes for their own business purposes. Specifically, defendants keep a computer and printer at the group homes solely for use by defendants' employees. Defendants' employees use the dining room tables to prepare paperwork and the futon or couch for sleeping.

## III. Discussion

TSS asserts the companionship services exemption as an affirmative defense to plaintiff's FLSA claim; therefore, it has the burden of proof on this issue.[17] A complaint "is subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense, but the defense clearly must appear on the face of the pleading."[18] In this case, the First Amended Complaint specifically alleges that defendants misclassified the Residential

---

[17]*Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *see also Sanders v. Elephant Butte Irrigation Dist. of N.M.*, 112 F.3d 468, 470 (10th Cir. 1997).

[18]*Doe v. Bally*, No. 05-1346-WEB, 2007 WL 628273, at *2 (D. Kan. Mar. 1, 2007) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).

Companions as exempt from the FLSA and denied them their FLSA-mandated overtime premium pay.[19]

Defendants' raise four arguments in support of dismissal of plaintiff's FLSA claim: 1) the "domestic services" definition, which includes the requirement of a "private home," does not apply to the companionship services exemption; 2) if the domestic services requirement is not read out of the companionship services exemption, Mockingbird qualifies as a private home; 3) plaintiff's Complaint is deficient with respect to the so-called "20% rule"; and 4) plaintiff's Complaint fails to state a claim against Gray.  The Court discusses each in turn.

### A.     Domestic Services Requirement

Defendants contend they are exempt from paying overtime to plaintiff under the "companionship services" exemption found in 29 U.S.C. § 213(a)(15), which exempts payment of overtime wages to employees who provide "companionship services" for individuals who are unable to care for themselves.  Plaintiff counters that defendants are not able to take advantage of the "companionship services" exemption because TSS does not meet the requirement that services be performed in a "private home" and because plaintiff spends more than twenty percent of her time performing general household work unrelated or incidental to the care of the clients.

The FLSA exempts from its minimum wage and maximum hours requirements any employee who is "employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves."[20]  The "companionship services" exemption applies to those companionship workers who "are

---

[19](Doc. 11 at 9.)

[20]29 U.S.C. § 213(a)(15).

employed by an employer or agency other than the family or household using their services . . .

[whether or not] such an employee [is assigned] to more than one household or family in the

same workweek. . . ."[21]

The statute does not define "domestic service employment" or "companionship services,"

instead leaving the terms to be "defined and delimited by regulations of the Secretary [of

Labor]."[22]  "Domestic service employment" is defined as "services of a household nature

performed by an employee in or about a private home (permanent or temporary) of the person by

whom he or she is employed. . . ."[23]  The term "companionship services" is defined as follows:

> The term companionship services shall mean those services which
> provide fellowship, care, and protection for a person who, because
> of advanced age or physical or mental infirmity, cannot care for his
> or her own needs.  Such services may include household work
> related to the care of the aged or infirm person such as meal
> preparation, bed making, washing of clothes, and other similar
> services.  They may also include the performance of general
> household work: *Provided, however*, that such work is incidental,
> i.e., does not exceed 20 percent of the total weekly hours worked.[24]

Defendants assert that the definition of "domestic services," which includes the

requirement of services be performed in a "private home," does not apply to the companionship

services exemption, and that *all* persons employed by third-parties who provide companionship

services are exempt from overtime pay under the FLSA.  In support of its argument reading the

domestic services requirement out of 29 U.S.C. § 213(a)(15), defendants cite the Supreme Court

---

[21]29 C.F.R. § 552.109(a); *see also Long Island Care at Home Ltd. v. Coke*, 551 U.S. 158 (2007) (holding that this regulation is valid and binding).

[22]29 U.S.C. § 213(a)(15).

[23]29 C.F.R. § 552.3.

[24]29 C.F.R. § 552.6 (emphasis in original)

decision in *Long Island Care at Home, Ltd. v. Coke*.[25]  In that case, the plaintiff was "a domestic worker who provide[d] 'companionship services' to elderly and infirm men and women."[26]  The issue before the Court was whether the third-party employment regulation was valid and binding based on a perceived conflict between the language of the domestic services regulation and the third-party employment regulation.[27]  The Court agreed with the employee that the language of the domestic services regulation and the third party employment regulation was in conflict as to which workers were covered by the statutory exemption.[28]  The Court held that the third-party regulation was entitled to *Chevron* deference and is enforceable and concluded that, although the domestic services regulation is valid, the third-party regulation is controlling on the issue of third-party employment because, *inter alia*, the general is normally governed by the specific, and section 552.109(a) was the more specific regulation with respect to the third-party employment question.[29]  Accordingly, pursuant to § 552.109(a), a domestic service employee, employed by a third-party employer rather than directly by the family of the person receiving care, is also exempt from the overtime requirements of the FLSA.[30]

Defendants attempt to extend *Long Island Care's* ruling on statutory construction, that the specific controls the general, to effectively eliminate the requirement that to be exempt, the services must be provided in a private home, since the definition of "companionship services"

---

[25]551 U.S. 158 (2007).

[26]*Id*. at 163.

[27]*Id*. at 164.

[28]*Id*. at 169.

[29]*Id*. at 165.

[30]*Id*. at 169-70.

adopted by the Department of Labor ("DOL") does not include any such limitation. Thus, defendants argue, the specific definition of "companionship services" in § 552.6 controls over the general definition of "domestic services" found in § 552.3. The Court disagrees. The holding in *Long Island Care* was very narrow, and merely reinforced that the exemption extends to domestic service employees who are paid by a third-party agency to provide companionship services in private homes. The Supreme Court did not extend the exemption to employees providing companionship services in non-domestic service employment, that is, services that are not performed in a private home. Defendants do not cite, nor did the Court find, any case law adopting defendants' broad extension of the ruling in *Long Island Care*.

Moreover, defendants' argument is in conflict with both the DOL interpretation of the regulations and Tenth Circuit precedent. In *Long Island Care*, the Supreme Court held that an internal DOL Advisory Memorandum was the DOL's most recent interpretation of the regulations and was controlling.[31] The Advisory Memorandum states:

> The text of the FLSA makes the applicability of the companionship exemption dependent upon the nature of the employee's activities and the place of their performance, without regard to the identity of the employer. . . . This language is naturally read to exempt any employee who provides companionship services to an aged or infirm individual in a private home. The statute does not draw any distinction between companions who are employed by the owners of the homes in which they are working and companions who are instead employed by third party employers.[32]

The DOL explained that

> The regulations' definition of "domestic service employment" is

---

[31]*Id.* at 171.

[32]*See* Doc. 29, Ex. A, Wage and Hour Advisory Mem. No. 2005-1, at 1.

> relevant to determining the scope of the companionship exemption because the text of section 13(a)(15) exempts only those companions who are "employed <u>in domestic service employment</u> to provide companionship services." Thus, the statute seems to contemplate that to qualify for the exemption, an employee must <u>both</u> "provide companionship services" <u>and</u> be "employed in domestic service employment."[33]

Thus, the DOL's position is that only employees providing companionship services in domestic service employment are exempt from receiving overtime pay, regardless of who pays them, and that domestic service employment can only occur in a private home.

Further, in *Fowler v. Incor*,[34] the Tenth Circuit addressed a similar companionship services issue. In that case, decided post-*Long Island Care*, the employees provided companionship services to Incor's disabled clients that lived in group homes.[35] After noting it had delayed review until the decision in *Long Island Care*,[36] the court analyzed whether the companionship services were provided in a private home, using the same factors as Tenth Circuit decisions pre-dating *Long Island Care*.[37] The court remanded the case to the district court for a "home-by-home" analysis of whether the companionship services were provided in private homes.[38] On remand, the district court held there are two key components to the exemption: 1) the employment must be "domestic service employment," and 2) the services provided must be

---

[33]*Id.* at 3 (citing 29 U.S.C. § 213(a)(15)) (emphasis supplied).

[34]279 F. App'x 590 (10th Cir. 2008).

[35]*Id.* at 591.

[36]*Id.* at 592 n.3.

[37]*Id.* at 593-96.

[38]*Id.* at 596.

"companionship services" as those terms are defined by the applicable regulations.[39]  The court

went on to explain that "domestic service employment" is defined as services performed in a

private home, regardless of whether the employee is employed by a third party,[40] and, with

respect to that case, whether the employees spent more than twenty percent of their time

performing general household work unrelated or incidental to the care of the clients.[41]

Accordingly, the Court denies defendants' motion to dismiss on this ground.

B.      **Private Home**

Alternatively, defendants argue that if the domestic services requirement is not read

out of the companionship services exemption, plaintiff's Complaint should be dismissed

nonetheless because Mockingbird is a private home.  As both parties note, the Tenth Circuit

has explained that the question of whether a client's residence falls within the private home

exception is a fact-intensive inquiry to be undertaken on a unit-by-unit basis, and no single

factor is dispositive.[42]  The key inquiries are "who has ultimate management control of the

unit and whether the unit is maintained primarily to facilitate the provision of assistive

services."[43]  The following factors are most pertinent to the key inquiry:

> First, where did the client live before beginning to receive
> services? Second, who owns the living unit?  Ownership by
> the service provider is a strong indication the home is not a
> private one.  Ownership by the client or the client's family is

[39]*Fowler v. Incor*, No. 03-321-RAW, 2009 WL 366341 (E.D. Okla. Feb. 12, 2009); *accord Zachary v. Rescare Okla., Inc.*, 471 F. Supp. 2d 1183, 1194-95 (N.D. Okla. 2006).

[40]*Fowler*, 2009 WL 366341, at *2 (citing *Long Island Care*, 551 U.S. at 158).

[41]*Id.*

[42]*Id.* (citing *Welding v. BIOS Corp.*, 353 F.3d 1214, 1218 (10th Cir. 2004)).

[43]*Id.* (quoting *Welding,* 353 F.3d at 1219).

an indication the home is a private one. A leased unit is more ambiguous. Third, who manages and maintains the residence? That is, who pays the mortgage or rent, utilities and provides food and clothing? Fourth, would the client be allowed to live in the unit if the client were not contracting with the provider? Fifth, what is the relative difference in the cost of the services and the total cost of maintaining the living unit? Sixth, does the service provider use any part of the residence for its own business purposes?[44]

No single factor is dispositive and some may be more important than others.[45]

As set forth above, the Court does not consider materials outside the pleadings submitted by defendants. Plaintiff's Complaint alleges that she is not exempt from overtime requirements under the companionship services exemption because she provided services in a group home operated by defendants, not a private residence. Plaintiff alleges that Gray owns Mockingbird and leases it to TSS, and that TSS's clients would not be allowed to live in the group home if they were not contracting with defendants for their services. All of these allegations have been identified by the Tenth Circuit as factors indicating that the home is not a private one. Because plaintiff alleges that Mockingbird was not a private home, and the Court must accept that allegation as true on a motion to dismiss, plaintiff has stated a plausible claim for relief under the FLSA.

Nevertheless, defendants suggest that the first *Welding* factor "may no longer be relevant given the changes in services to the developmentally disabled in Kansas." Defendants argue that plaintiff alleges that TSS is a "licensed community service provider," that provides residential services to the developmentally disabled in a home or residential

---

[44]*Id.* (citing *Welding*, 353 F.3d at 1219-20).

[45]*Welding*, 353 F.3d at 1219.

setting.  That licensed status is granted by the Department of Social and Rehabilitation Services ("SRS") under the Developmental Disabilities Reform Act,[46] to provide home and community based services to the residents at Mockingbird.  These "Residential Supports" services can only be provided to the individual "in his/her home" by a licensed community service provider.  Thus, defendants argue, since the residents are receiving these services from TSS while residing at Mockingbird, it follows that Mockingbird is a "private home."

The Court is not convinced, however, that the state SRS waiver or reimbursement requirements are enough to establish as a matter of law that Mockingbird is a private home under the FLSA.  Even where state laws and regulations cover the same issues, the FLSA and its regulations are controlling when directly on point.[47]  Moreover, Tenth Circuit cases consistently apply all the *Welding* factors to group residential homes such as those run by TSS, and the first factor is but one of several this Court is directed to consider in making this factual determination.  Defendants' motion to dismiss is denied on this ground.

### C.       Twenty Percent Requirement

Plaintiff further claims that even if Mockingbird is a private home, she spent more than twenty percent of the total hours worked each week performing general household tasks incidental to the companionship services.  "Section 552.6 distinguishes household work related to the care of a client, which includes meal preparation, bed making, laundry, and other similar services, from general household work, which is unrelated to the care of the

---

[46]K.S.A. § 39-1801, *et seq.*

[47]*See Sayler v. Ohio Bureau of Workers' Comp.*, 83 F.3d 784, 789 (6th Cir. 1996).

client."[48]  The companionship services regulation provides that employees who spend more than twenty percent of their weekly hours worked performing general household work are not qualified for the exemption.[49]

Plaintiff's Complaint alleges that she spent more than twenty percent of her total weekly hours performing general household work, "such as meal preparation, bed making, washing clothes and other similar services."  All of these tasks, however, are identified in the regulation as exempt services, and defendants are correct that plaintiff has failed to identify in her Complaint any nonpatient-related household work incidental to the care of the clients that falls under the twenty percent rule.  In response to defendants' argument that her Complaint is deficient with respect to this issue, plaintiff attaches an affidavit describing work she performed that would be considered general household work, such as cleaning various rooms in the house and the deck outside.[50]  For the reasons set forth above, the Court does not consider the affidavit for purposes of defendants' Rule 12(b)(6) motion.[51] However, because the "20% rule" is an exception to the companionship services exemption, and defendants bear the burden of proof on its entitlement to this exemption,[52] the Court will grant plaintiff's request for leave to amend the Complaint to include the allegations made in

---

[48]*Fowler*, 279 F. App'x at *5.

[49]29 C.F.R. § 552.6.

[50](Doc. 29, Ex. C.)

[51]Fed. R. Civ. P. 12(d).

[52]*Fowler*,  279 F. App'x at *6.

her affidavit.[53]

### D. Plausible Claim Against Gray

In addition to making a claim against her former employer, TSS, plaintiff alleges

Gray should be held liable for overtime pay as an "employer" under the FLSA. Defendants

contend that the allegations against Gray fail to state a claim upon which relief can be

granted because they are "merely labels and conclusions and fail to state any factual

allegations that would allow the Court to draw any reasonable inference that Mr. Gray is

personally liable for the misconduct alleged."

Section 203(d) of the FLSA states that "any person acting directly or indirectly in the

interest of an employer in relation to an employee" is considered an employer.[54] The

FLSA's definition of an employer is "much more expansive than traditional common law

definitions."[55] "Not every stockholder with significant ownership in a corporation or

corporate officer is automatically an employer for purposes of the FLSA; rather, in order for

such individuals to be considered an employer, they must have 'operational control of

significant aspects of the corporation's day to day functions.'"[56] To assist district courts in

making this determination, circuit courts have identified multiple factors they believe are

---

[53]In so ruling, the Court notes that because it denies defendants' motion to dismiss on the issue of whether Mockingbird is a private home, addressing the merits of the "20% rule" as to that unit at this time is unnecessary. *See Fowler*, 2009 366341, at *2 (addressing "private home" issue first, because if the court determines that a particular unit is not a private home, then overtime hours worked are compensable and the court need not address the "20 % rule" as to that unit).

[54]29 U.S.C. § 203(d); *Garcia v. Palomino, Inc.*, —F. Supp. 2d —, 2010 WL 3613923, at *4 (D. Kan. Sept. 10, 2010).

[55]*Garcia*, 2010 WL 3613923, at *4 (citing *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (quoting *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (per curiam)).

[56]*Id.* (quoting *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007)); *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999); *Dole*, 942 F.2d at 966.

16

relevant to the inquiry, including the individual's ownership interest in the corporation, the degree of control the individual exhibits over the corporation's financial affairs, the individual's involvement in employee compensation decisions, the individual's control over employee work schedules or conditions of employment, and the individual's ability to affect an employee's employment relationship with the corporation.[57]

Plaintiff's Complaint alleges that Gray was an owner, officer and employee of TSS and acted directly or indirectly in the interest of TSS in relation to plaintiff and other Residential Companions. The Complaint further alleges that Gray was responsible for and intimately involved in employment practices of TSS, including hiring, firing and the decision not to pay plaintiff overtime pay. The Complaint cites to TSS's website, which states that Gray is "actively involved in the day-to-day operations of [TSS]."

Although the Tenth Circuit has not addressed the sufficiency of an FLSA complaint under Rule 8(a), the Circuit has recognized that, even after *Twombly*, a complaint "need only contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"[58] Moreover, the degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2) depends on the type of case.[59] Plaintiff's Complaint has set forth a straightforward FLSA claim for overtime compensation and alleges that Gray's level of ownership and involvement in TSS's operations makes him an employer under the FLSA. Defendants' motion to dismiss is

---

[57]*Id.* (collecting cases).

[58]*Christensen v. Park City Mun. Corp.*, 554 F. 3d 1271, 1276 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 550).

[59]*Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (quotation omitted).

denied on this ground.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion to

Dismiss (Doc. 18) is DENIED;

**IT IS FURTHER ORDERED THAT** plaintiff's motion for leave to amend the

Complaint with respect to the so-called "20% rule" is GRANTED.  Plaintiff shall file her

Second Amended Complaint within fourteen (14) days of this Order in accordance with D.

Kan. Rule 15.1.

**IT IS SO ORDERED.**

Dated: February 2, 2011

 S/ Julie A. Robinson_____
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE